All rise. Please be seated. The next case this morning is People v. Wyckoff, 5-14-0521. Are counsel ready to proceed? Before you start, counsel, it's important to note for the record that the other justice on this panel is Justice Chapman. She's not able to be here this morning, but she will participate reading the briefs and listening to the argument. You may proceed. May it please the Court, Counsel, Assistant Appellate Defender Inzantinow on behalf of David Wyckoff. Mr. Wyckoff is not weaving a fictitious tale of incompetence and ignorance here. Rather, he truly faced a grave reality when two of his most fundamental rights, his right to a speedy trial and his right to a trial by jury, were violated by the State. Where not one, but two fundamental rights were denied, this Court must indulge in every reasonable presumption against waiver of Mr. Wyckoff's rights. Here, Mr. Wyckoff was arrested on September 1, 2013. He remained in custody until he was sentenced. The State initially charged him with aggravated domestic battery. Then, after more than 180 days had passed, after Mr. Wyckoff had been preparing solely against the single pending charge of aggravated domestic battery, the State began filing a series of new and additional charges, including but not limited to more serious charges like attempt first-degree murder, attempt aggravated criminal sexual assault, just to name a few. All of these charges stem from the same act, from one continuous act on September 1, 2013 in Mr. Wyckoff's backyard by a hot tub. As the State points out, the record contains a police report that revealed that the State had all of the relevant information at the time it initially filed its first charge. The police report shows that Ms. Wendt told police officers from the beginning that she believed she would have drowned had Mr. Wyckoff gotten her into the hot tub. And the report includes two instances when she tells police officers, I want to see Mr. Wyckoff charged with attempt first-degree murder, or I want to talk to the State because I want to pursue these attempt murder charges. The report also indicates that Mr. Wyckoff's push for Ms. Wendt to follow him into the hot tub, this information was also in the report, and that's the basis for the sex charges in this case. Further, Ms. Wendt's trial testimony showed that all of these events took place in Mr. Wyckoff's backyard by the hot tub, where she was hit in the head three times with an object, fell to the ground, wrestling Mr. Wyckoff, laying by the hot tub, and then facing the hot tub. This was one act happening within minutes, maybe seconds, and the State had all of the relevant information from the start. However, based on this information, the State only charged Mr. Wyckoff with the aggravated domestic battery charge. And then only after 180 days, after the State had time to prepare for these more serious charges like attempt first-degree murder and attempt aggravated criminal sexual assault, did the State charge Mr. Wyckoff with these new charges. This compulsory joinder and speedy trial principles are triggered here. And the speedy trial and compulsory joinder principles are supposed to protect defendants like Mr. Wyckoff in these situations, where the State lulls the defendant, where the State lulls Mr. Wyckoff into continuance after continuance. The records show that defense counsel stated repeatedly that the State was still going through negotiations with Ms. Wendt, that they were still waiting for a potential agreement or a negotiation, a bargain. So after all of these continuances take place, the State files these more serious charges, when Mr. Wyckoff had been only preparing for the aggravated domestic battery charge. So the presumption here cannot be that Mr. Wyckoff would have agreed to these continuances had he known from the beginning that he was facing these serious charges. Because at this point, now he's faced with either going to trial unprepared or asking for more continuances. The State takes this opportunity to offer Mr. Wyckoff a deal. Hey, we'll get rid of all of these more serious charges if you waive your right to adjourn. And in essence, he was waiving his right to a speedy trial at that time in exchange for getting rid of the more serious charges. Which, as discussed above, could never have been brought in the first place due to speedy trial compulsory joinder principles. Thus, based on the State's empty promises, Mr. Wyckoff waived his fundamental rights to a speedy trial in a trial by jury, and this Court has to reverse and remand for a new trial. However, even if this Court disagrees with Mr. Wyckoff that his fundamental rights to a speedy trial in a trial by jury were not violated, or that they were violated, this Court has to still reverse and remand because the trial court took judicial notice of a separate, unrelated civil domestic violence order of protection case to find Mr. Wyckoff guilty of aggravated domestic battery. The only contested issue at trial was whether there was a dating relationship between Mr. Wyckoff and Ms. Wendt. If there's no dating relationship, it's just an aggravated battery. If there is a dating relationship, then comes the aggravated domestic battery. And here, the trial court improperly took notice of Wendt's civil domestic violence order of protection case, which was a completely separate, unrelated case to this criminal charge here. The parties were different. The standards of proof were different. The fundamental rights triggered were different. The consequences in both cases were different. Just to list a few. Thus, this Court must reverse and remand. Before getting to the facts of the case, Your Honor's technology is evolving rapidly today. And, you know, high-speed Internet, Wi-Fi is a commonplace in businesses and homes. We're living in a world where instant gratification is becoming the norm. I would say it's faster than some old fogeys can keep up with. This is the same with relationships, and here I say relationships, not dating relationships, because there's a new but real growing trend of easily accessible quick connections. With the push of a button, with the download of an app, with an email or a text, without any prior face-to-face communications, people can connect nowadays, forget about it the next day. With this in mind, we have a case where one party says that this was a casual hookup. It was merely a sexual relationship. While the other party said there was a dating relationship, even though there were no dates or gifts involved. That's not a disagreement about technology, though. That's a disagreement about what a dating relationship means, isn't it? Well, the casual hookup, I think, deals a lot with our instant gratification, instant feedback kind of society. This idea of a casual hookup, which is what Mr. Wycombe stated this was, is different than what Ms. Wentz is saying. Because Ms. Wentz, the relationship here was maybe a month, a month and a half. They said they met mostly at night. It was mostly texting in the beginning. It only became sexual and physical. Under the two versions, how many times did they meet for sex? I believe the testimony from Ms. Wentz said that it was about three times. Or Mr. Wycombe might have said it was about three times. They met mostly at night. And this was after that initial just texting and Facebooking. Did that answer your question? Well, what was hers? I am not certain I can get back to you on that. It was a lot more times than that, though, wasn't it? I think Ms. Wentz said that they texted a lot. They texted for hours and hours. But the sexual relationship where they met up to have sex, I think it was less than, it was three or less than five. I can get back to you on that. So what's the point? You're arguing that the OP taking judicial notice of the Order of Protection defined as a dating relationship, and your client disagrees with that. Well, if I'm understanding your question correctly. Yeah, this discussion is all interesting, but what's the point for our case today? The point here is that the OP was used to find this dating relationship. And this OP was an unrelated civil case, as I said, with different burdens of proof, where Mr. Wycombe didn't automatically get the right to counsel. Thus, the trial court here improperly took judicial notice of Ms. Wentz' civil domestic violence Order of Protection case file, the entire case file. So we don't know what was in it. We don't know exactly what the court looked at. Here, the court clearly states in the record that it will take judicial notice. It did take judicial notice. That's the reason why, in considering all the evidence and this Order of Protection case, the court denies Mr. Wycombe's motion for a directed verdict. And at the finding of guilt, this is what the court uses to find Mr. Wycombe guilty and find that dating element in this case. The court also made a record saying that it considered Judge Sanders' finding there, where it found that a relationship existed between the parties and that the relationship was protected under the Illinois Domestic Violence Act. It also said it took into consideration Judge Eder's finding that there was a relationship between Ms. Wycombe and Mr. Wentz. This was improper. The problem here is serious because the trial court's reliance on this Order of Protection file, where this is a credibility contest between Mr. Wycombe and Ms. Wentz, the trial court's presumption that it knew the law no longer exists because it improperly took this matter under judicial notice when it was not judicially noticeable. Thus, using this Order of Protection case to find Mr. Wycombe guilty beyond a reasonable doubt was error here. And this court wants to reverse the remand. Are there any questions? Yes. Couldn't these meetings for sex be considered dates? Yes, but there's a credibility contest here because Mr. Wycombe said it wasn't. Well, under your client's version, there were at least three, correct? Yes. And the court could have relied upon that, couldn't it? Well, that comes back to the instant gratification society that we're living in. You could finish your point. So these three dates that they actually met up to have sex could purely be a sexual relationship, thus Mr. Wycombe's version of just having merely a sexual relationship. So you're saying the meeting for sex is not a date? It might not be. I mean, it doesn't – it would depend. Here, Mr. Wycombe said it wasn't. Ms. Wentz said it was. So there's a credibility contest between the two parties. We'll have an opportunity for a rebuttal. Counsel for the State. May I please support, Counsel? Jennifer Camden on behalf of the people. As a factual matter, Wentz testified that she visited the defendant at his home. They both lived with their parents during this time. They were 19, 20 years old, 21. She visited his home during these two months between 10 and 20 times, and they had sex between 7 and 15 times during that time period. The defendant testified that she visited his house about five times and that they had relations about three times. So both of them agreed that they didn't always meet and have sex, and neither of them testified that they met for the explicit purpose of having intercourse. Could that be considered a date if they did? Your Honor, the parties really didn't brief the issue of whether this relationship would qualify as a dating relationship. I mean, obviously, I would argue that the evidence was sufficient to prove that they did have a dating relationship. They texted for hours a day. She testified that they exchanged I love yous. They watched movies. She watched them play video games. He testified that she gave him rides during this time in her car. There was more evidence than the evidence of a physical relationship that was present. But the idea of the closeness of the evidence comes into this case in the briefing in the context of whether the judicial notice of the O.P. file tipped the scale. Well, that's what I'm getting at. Right. So if you don't have the O.P. file, you still have evidence of a dating relationship. Oh, absolutely, Your Honor. And the O.P. file is not in the record. What we know that it contains is Taylor's. Okay. How is it that you take judicial notice of something and then it doesn't end up in the record? I don't know, Your Honor. It's the defendant's burden to prove error. And so we're here arguing today about evidence that we're unsure of the scope of. What we do know, Your Honor, is that the case file contained Taylor's verified petition in support of her application for an O.P. and that it contained the emergency and plenary orders of protection themselves. And the point that I want to make is that those contents of the file, whatever else it may have contained, those contents of the file were before the trial court, not just because the court took judicial notice of those facts, but because Taylor testified to those facts. There was direct testimony that those orders of protection were awarded, and she testified about the petition itself. Let me ask you this. Were any of those documents used to cross-examine? Yes, they were. And it was the defense that did it. The defense attorney's primary mode of impeaching Taylor's testimony that there was a dating relationship was to use her petition seeking an order of protection and argue that she had previously made out a sworn statement that they didn't have a dating relationship. So he procured part of the admission of part of that petition through examining her, and then there was testimony on redirect and on recross that the orders of protection were granted. And the court then asked the – sorry, the state then asked the court to take judicial notice of the O.P. file, and that is what allowed the court to examine Taylor's entire petition in the O.P. file, not just the part read into the record by defense counsel. It evaluated the defendant's motion for a directive verdict, and then determining whether that O.P. petition had impeached her testimony on direct examination, as defense counsel had argued that it had. So this petition was the cornerstone of defendant's argument here. And for a defendant now to say that it was error for the court to take judicial notice of it flies in the face of principles of opening the door, invited error, estoppel. And so that's part of the state's argument regarding Issue 2 of the defendant's brief. Also, there's no evidence in the record, excuse me, that the court substituted the issuance of those orders of protections for its own evaluation of the evidence. I note that both times the state made reference to the issuance of those orders, it explicitly flagged for the court that those orders had no preclusive effect and that there was no estoppel or waiver issue presented by those petitions. The state explicitly warned or reminded the court that it was not simply to import the finding in the O.P. case as its finding in this case. The court found the defendant guilty beyond a reasonable doubt based on its evaluation of the evidence that it had heard before it via direct testimony. Also, the court, when it compared the testimony of Wendt and the testimony of the defendant, compared and contrasted what they agreed and disagreed with, and they agreed on an awful lot, as the state explains in its answer brief, the court stated that the defendant's testimony regarding the lack of romantic or dating relationship was unbelievable given the evidence of his jealous attack of her. And that evidence was uncontested. The defendant didn't contest that he had actually physically attacked her. His defense was that he didn't remember doing that. But he also didn't contest Taylor's testimony that he attacked her after she met up with him to console him about something, and then she told him that she, in the interim six months or so since they'd broken up, had gotten engaged to another man. He attacked her after that. And that is the fact that the trial judge used to determine who had been telling the truth about the existence of a romantic or dating relationship. And so that means that there was no nexus between the claimed error here and the outcome of the case. Counsel, what's your position regarding the compulsory joinder argument set forth by the counsel? Right. Well, the state's position is that the defendant hasn't proved that any speedy trial motion would have been successful. How so? I mean, it's the same act. I disagree. They had the information from the get-go, didn't they? I disagree about both of those parts of your question, respectfully, Your Honor. As to the same act argument, the attempt sexual offenses, the three charges of attempt sexual offenses charged him with hitting her on the head with a rock and dragging her toward a hot tub or attempting to drag her into a hot tub. The original aggravated domestic battery charge alleged that he hit her on the head with a rock and choked her around the neck with his hand. Now, of course, the hitting on the head with a rock is the same act, but attempting to drag a person into the hot tub is not the same act as choking with the hands. And I'd also point out that there's no evidence in the record that the state then knew or knew at the time that it filed that original aggravated domestic battery charge that he had attempted to drag her into the hot tub. The police report, I believe, speaks of him attempting to cajole her into the hot tub verbally, and she gave that testimony at trial that he had attempted to talk her into joining him in the hot tub, not that he had physically dragged her. So it's unclear from the record when the state learned of that aspect. Also, I'd point out that the original aggravated domestic battery charge didn't charge him with inflicting brain bodily harm, whereas the subsequently filed charges did. And it's unclear when the state learned of the extent of her injuries. Now, some of her injuries were apparent, of course, right away, but she testified that she sustained severe headaches for about a month after the attack. Obviously, that isn't something that the state would have known two days after, and I think it's fair to suggest that the state's brain bodily harm allegation waited until all the evidence of the head injury that she suffered became plain. The point is that there's no evidence of when the state learned of the dragging or of the extent of the injury, and also I question whether the charges were based on the same act, based on the compulsory joinder precedent cited in the people's brief. Also, I'd point out that essentially the defendant's claim is that counsel was ineffective for allowing him to agree to a deal with the state that secured the surefire dismissal of counts one through six. His argument is that counsel should have instead advised him, and we don't know what counsel advised him to do, to reject that offer and roll the dice on a speedy trial motion. And I submit that it would be a reasonable strategy to take the sure thing. Thank you, counsel. Thank you. Ms. Bobham? Yes, Your Honor. Regarding the first issue, counsel stated that it took 30 days to figure out that she had headaches or it took 30 days for the state to find out. That's still less than 180 days when they filed all of these new charges. But I want to focus on the second issue here because there is a clear problem. The trial court took judicial notice of an unrelated separate civil case. The standards and the burdens of proof are different. The parties are different. And in the criminal case that Mr. Wyckoff was charged with, the state's burdens still remain at trial. There's no lifting of that burden. At trial, the state only presented its one witness, Ms. Wendt, and then used the judicial notice aspect to boost its case. Counsel stated that defense counsel opened the door, the defendant opened the door. That's not the issue here. Defense counsel first used this for impeachment purposes only. That's not a substantive matter. The state then used this to bring in additional information and then asked the court to take judicial notice of this matter. The counsel's argument about this being invited air, that the defendant had the burden of completing the record, this is kind of over the edge here. Because this order of protection case file that should have never been brought in the first place is not in the record, that's not the defendant's burden to complete the record here  The trial court is clear here that it did take judicial notice. It did consider it to deny the motion for a directive verdict. It did consider it in finding Mr. Wyckoff guilty. If you look at the opening brief pages 28 and 29, it goes through in black quotes of what exactly the trial court reviewed, what it looked at in finding Mr. Wyckoff guilty. And it found Mr. Wyckoff guilty of both aggravated domestic battery and aggravated domestic battery. Had this order of protection case not been admitted under judicial notice principles, there is a credibility contest as to whether there was a dating relationship based on Mr. Wyckoff's statements and Ms. Wynne's statements. Unless this court has any other questions. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course.